## FINIS GOREE V. THE STATE.

No. 10593.   Delivered March 9, 1927.

Rehearing denied April 27, 1927.

**1.—Murder—Charge of Court—On Provoking Difficulty—Properly Submitted.**

Where, on a trial for murder, the state's testimony disclosed that the appellant, without invitation, and with a drawn pistol, entered the residence and room where deceased was reading, and informed the deceased that he had heard of the threats made by deceased against him, the appellant defending upon self-defense, this testimony of the state was sufficient to call for a charge on provoking the difficulty.

**2.—Same—Charge of Court—Defendant's Right to Arm Himself—Properly Presented.**

Appellant's criticism of the charge of the court in its presentation of the law of appellant's right to arm himself and to seek an explanation of deceased, and to see his wife and child, was evidently eliminated on objection raised, as the court's amended charge seems to have given sufficiently the law applicable to the facts, and issue raised on this phase of the case.

**3.—Same—Bill of Exception—Incomplete—No Error Presented.**

Where appellant complains of the admission of testimony of the witness, Cora McClurkan, that on Tuesday morning, prior to the killing that evening, she saw her sister, wife of the appellant, place in the mail box a letter addressed to Mrs. W. T. Goree, mother of the appellant, and the bill fails to set out any facts showing that injury resulted to the appellant by reason of this testimony, said bill is incomplete and discloses no error.

**4.—Same—Evidence—Bill of Exception—Incomplete.**

Where appellant, in his bill of exception, complains of the action of the court in permitting the state to prove by the sheriff, that while appellant was under arrest, on the night of the homicide, that witness observed his condition as to whether he appeared worried, disturbed or composed, and the bill fails to set out what the sheriff testified, we are unable to appraise the value of said bill. In the absence of a showing of injury, the presumption prevails that the trial court ruled correctly.

**5.—Same—Rule Invoked—Permitting Witness to Testify—Discretion of Court.**

Appellant complains of the action of the court in permitting the sister of deceased to testify to a collateral issue, because the rule had been invoked, and said witness had heard the testimony. This court has repeatedly held that such matters are left largely to the discretion of the trial court, and in the absence of any abuse of said discretion, his action will not be reviewed.

ON REHEARING.

**6.—Same—Charge of Court—On Provoking the Difficulty—Rule Stated.**

To warrant a charge on the law of provoking the difficulty "there must be evidence that the accused willingly and knowingly used some language, or did some act, after meeting his adversary, reasonably calculated to lead to an affray, or deadly conflict, and unless such act was reasonably calculated and intended to and did have such effect, the right of self-defense would not thereby be forfeited." See Robertson v. State, 83 Tex. Crim. Rep. 244, and other authorities cited in opinion on rehearing.

**7.—Same—Charge of Court—Considered in Its Entirety—Rule Stated.**

It is not necessary that the court's charge shall present all of the law applicable to any issue presented, in one paragraph. The different phases embraced in the analysis of a legal proposition and its application to facts in evidence frequently render this impossible. On appeal the charge is considered in its entirety, and so considered, if it fairly presents all of the issues raised by the evidence, it will be held sufficient, notwithstanding that some paragraph, considered alone, may be subject to criticism. In the instant case, viewed as a whole, the court's charge correctly presented the law on self-defense, and provoking the difficulty.

Appeal from the District Court of Jones County. Tried below before the Hon. Bruce W. Bryant, Judge.

Appeal from a conviction of murder, penalty 25 years in the penitentiary.

The opinion states the case.

*Stinson, Coombes & Brooks, Roy L. Duke* and *T. J. McMahon* of Abilene, for appellant. On provoking the difficulty, appellant cites: Thomas v. State, 71 Tex. Crim. Rep. 387; Shannon v. State, 35 Tex. Crim. Rep. 2; Airhart v. State, 40 Tex. Crim. Rep. 472; Hjeronymus v. State, 46 Tex. Crim. Rep. 161; McDandless v. State, 42 Tex. Crim. Rep. 61; Carter v. State, 220 S. W. 335.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant was convicted of murder, and his punishment assessed at 25 years in the penitentiary.

The record discloses that the appellant was the son-in-law of

the deceased, S. C. McClurkan, and that prior to the homicide appellant, who was supposed to be suffering from tuberculosis, left his wife and small child in Jones County and went to the vicinity of San Angelo for the purpose of taking treatment; and that after remaining there for a short time, he returned to the home of his father, which was in the neighborhood of deceased's home. It was the contention of the state, and evidence was introduced to that effect, that the appellant, about sun-down on the day of the homicide, entered the residence of deceased with a pistol in his hand, walked into the room where deceased sat reading in the presence of appellant's wife and her sister, Mrs. McCormick, and informed deceased that he had heard of the threats which deceased had made against him, to which the deceased, after some hesitation, replied that he had not made any threats, whereupon appellant, without provocation, shot and killed the deceased as he sat in the chair where he had been reading. The appellant defended upon the ground—and he so testified and introduced other evidence to that effect— that when he left home to go to San Angelo on account of his tubercular trouble he and his wife were on good terms; that after he reached San Angelo he received information through his mother to the effect that his wife had informed her that she could not live any more with the appellant under the circumstances, that her father did not want her to do so, and that she was going to take the baby and lease; and that on the day preceding the homicide deceased informed appellant's brother that he didn't want appellant around his premises any more, and that if appellant came around his premises again he would kill him. It was also the contention of the appellant that on the evening of the homicide he saw a letter purported to be from the deceased to appellant's father, and which, in substance, requested that appellant stay away from his premises and stated that a failure to do so would result in appellant's death. The appellant also testified that said threats and the thought of deceased's attempts to separate him from his wife and child preyed upon his mind until he decided to arm himself against an attack by the deceased and seek an explanation as to why deceased was attempting to separate him and his family. He further testified that upon entering the room where deceased sat he informed deceased that he had come to see his wife and child; that the deceased reminded him of the fact that he had sent him word to keep off the premises, and that the deceased was advancing towards him with a drawn hammer, and deceased's son-in-law, McCormick, was entering the room

with a gun, when appellant, according to his contention, shot and killed deceased in self-defense.

The record contains thirteen bills of exception, but from the brief and argument of appellant's counsel we infer that the serious questions urged upon this appeal are relative to the action of the court in charging the jury on the law of provoking the difficulty, and the alleged refusal of the court to charge sufficiently the law applicable to the facts relative to his right to arm himself and seek an explanation from deceased. After a careful examination of the appellant's contention, we find ourselves not in accord therewith. We think the state's testimony, showing that the appellant, without invitation and with a drawn pistol, entered the residence and room where deceased was reading and informed deceased that he had heard of the threats made by deceased against him, was sufficient to call for a charge on provoking the difficulty, where self-defense was relied on by the appellant.

We are also not in accord with the appellant's contention to the effect that the court failed to charge sufficiently the law applicable to the facts relative to the right of appellant to arm himself, to seek an explanation of deceased, and to see his wife and child. We are of the opinion that the charge is not open to the objection and criticism urged against it, as the court, in his general charge, seems to have given sufficiently the law applicable to the facts and issues raised on this phase of the case. Presumably the court amended his charge to meet this objection.

In bill of exception No. 13 the appellant complains of the action of the court in permitting the witness Cora McClurkan to testify, over his objection, that on Tuesday morning prior to the killing that evening she saw her sister, wife of the appellant, write and place in the mail box a letter to Mrs. W. T. Goree, mother of the appellant. This bill fails to set out any facts from which we could infer or see that injury resulted to the appellant by reason of this testimony, and, as presented, shows no error.

Bill No. 14 complains of the action of the court in permitting the state to prove by the sheriff, Hudson, that while the appellant was under arrest on the night of the homicide, he, the witness, observed appellant's condition, as to whether he appeared worried, disturbed or composed. This bill fails to set out what the sheriff testified, if anything, relative to appellant's condition or appearance, and we are therefore unable to determine from the bill as presented whether any injury resulted to the

appellant, or otherwise. In the absence of a showing to the contrary, the presumption prevails that the trial court ruled correctly.

Bill No. 15 complains of the action of the court in permitting the state to show by the witness Mrs. R. A. Sledge, sister of the deceased, that she lived with deceased in the state of California and that he was charged with no offense during said time. The objection urged to this testimony was that the rule had been invoked and said witness had heard the evidence introduced on the trial of the case before being called to testify. This court has repeatedly held that such matters are left largely to the discretion of the trial court, and in the absence of any abuse of said discretion, his action will not be reviewed. Furthermore, the bill, as presented, is insufficient to show any injury to the appellant by reason of the admission of this testimony.

After a careful examination of the entire record, and finding no reversible error therein, we are of the opinion that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—According to the testimony of the appellant, he and the deceased, on several occasions antecedent to the homicide, had had wordy altercations. During the absence of the appellant, his wife (daughter of deceased) had taken her child and gone to the home of her father. According to the appellant, he had been told that his life had been threatened by the deceased, and desiring to have the matter explained, he armed himself and went to the home of the deceased. According to his. testimony, appellant entered the front door, and deceased said: "What are you doing here?" Appellant replied: "I have come to see about my wife and baby." Deceased said: "Didn't I send you word never to cross my path or come down here and to stay away from here?" Appellant replied: "Yes, sir; I haven't seen my wife and baby in this time." Deceased said: "I told you not to come down here. Get out." About this time Frankie McCormick left the room and her husband entered with a hammer in his hand. About that time deceased said to appellant: "I told you to get out of here and never

come down here or put your foot on this place." At that moment McCormick pitched the hammer to the deceased and said: "Here, take this hammer." McCormick went back in his room and returned with a shotgun. Deceased then had a hammer and McCormick had a gun. Deceased had his hammer drawn back as if to strike the appellant, and McCormick came with a gun. Appellant said:

"Mr. McClurkan made a step, had his hammer drawn back, looked as if he was going to hit me, and Mr. McCormick coming with the gun. I made for the door sideways, shooting as I went for protection. * * * At the time I shot I believed McClurkan was going to carry those threats into execution. I thought Mr. McCormick was going to use the gun."

Appellant said that he took his pistol out when the deceased got the hammer and when he saw McCormick with a gun.

Mrs. John McCormick, appellant's sister-in-law, testified that she was present when the appellant arrived at her father's house; that she heard her sister say: "Finis," and her father say, "Ah, Finis," and observed the appellant standing in the doorway. He had opened the door and stood there with a pistol in his hand. He said: "I heard that threat you made yesterday." The deceased said nothing. The witness ran into the adjoining room to her husband, who was fixing the door with a hammer. He ran into the room with the hammer in his hand. Appellant said: "What are you doing with that hammer?" McCormick said he had been fixing the door and threw the hammer on the chair. The witness left the room and afterwards heard shots fired.

John McCormick testified that when he entered the room the appellant had a pistol in his hand. The deceased was sitting upon a chair about ten feet from the appellant. They were facing each other. Appellant asked the witness what he was going to do with the hammer he had. The witness said: "Nothing," and pitched the hammer on the chair which was situated at a different place from that in which the deceased was sitting. Appellant said to McClurkan: "I heard the threat you made about me yesterday." Deceased replied: "I never made any threat against you." The witness told the appellant that he did not think the deceased had threatened him or intended to hurt him. Appellant then walked to the front door and shot the deceased three times. The deceased fell from the rocking-chair in which he was sitting. He at the time had a book in his hand which he had been reading. The witness then went and fired at the appellant, who fired twice at the witness.

Appellant insists that the evidence was not such as to present the issue of provoking the difficulty, contending that the inquiry before the jury was who began the difficulty. The precedents illustrating the distinction between the two theories mentioned are referred to in the opinion of Carlile v. State, 96 Tex. Crim. Rep. 37. In that case, quoting from a text-writer, it was said:

"To render appropriate a charge on the law of provoking the difficulty, there must be evidence that 'the accused willingly and knowingly used some language or did some act after meeting his adversary reasonably calculated to lead to an affray or deadly conflict, and unless such act was reasonably calculated and intended to have such effect, the right of self-defense would not thereby be forfeited.'" Ruling Case Law, Vol. 13, p. 833, Sec. 137; Roberson v. State, 83 Tex. Crim. Rep. 244, and cases therein cited.

It must also appear that an attack or demonstration was made as a result of the provocation. In the present case, according to the appellant, he was the subject of an attack by both the deceased and his son-in-law when the fatal shots were fired; that this attack was made at a time when the appellant was an armed intruder in the home of the deceased. If appellant had a right of self-defense, it arose from the fact that he was the subject of an attack by the deceased and his son-in-law, McCormick. According to his testimony, this occurred after his entry into the house uninvited and unwelcomed, and after he had begun the conversation. The jury were to judge from the testimony before it, that of the state as well as of the appellant, and determine what words were said and acts done. Manifestly, the testimony authorized the conclusion that any assault that was made by the deceased and McCormick was due to the words and conduct of the appellant after he reached the home of the deceased. The jurors were likewise justified in concluding that the conduct of the appellant under the circumstances, viewed in the light of the previous relations of the parties, as claimed by the appellant, were reasonably calculated to invite an attack by the deceased and his son-in-law McCormick. The intent with which the appellant engaged in the enterprise, with which he went to the home of the deceased, and with which he used the words and did the acts which he recounted after reaching there was a question of fact for the jury to determine under an appropriate instruction from the court. Upon his testimony, especially as supplmented by that of the state, that at the time he entered the house the appellant had a pistol in

his hand and that his words and his manner were offensive, the court was bound in his charge to qualify the right of self-defense by instructing the jury upon the law of provoking the difficulty. This was done in a manner which to our minds accords with approved precedents as mentioned in the original opinion. The appellant's right to an interview and explanation from the deceased without the forfeit of his right of self-defense was guarded by a charge to the jury to the effect that he would not forfeit his right of self-defense by arming him,-self. For additional authorities, see Roberson v. State, 83 Tex. Crim. Rep. 244, and cases therein cited; also Stanley v. State, 81 Tex. Crim. Rep. 31.

In his motion for rehearing appellant insists that the charge on provoking the difficulty fell short of the legal requirements. The paragraph of the charge challenged reads as follows:

"On the other hand, if you find that the acts done, or language used by defendant, if any, was not under the circumstances reasonably calculated to or intended to provoke a difficulty, or an attack by deceased upon defendant, or if you have a reasonable doubt thereof, you will decide the issue of self-defense in accordance with the law on that subject given in other portions of this charge, wholly disregarding, and without reference to the law on the subject of provoking the difficulty."

We fail to find any exceptions addressed to the charge of the trial court on the ground that the converse of the law of provoking the difficulty was not sufficiently charged. Such criticism as appears to have been addressed to the trial court advanced the idea that that particular paragraph of the charge quoted above should have contained an instruction to the effect that the fact that the appellant was armed would not necessarily deprive him of the right of self-defense. As stated, that subject was specifically embraced in the charge prepared by the court, which must be appraised as a whole.

In his motion for rehearing appellant says that the paragraph of the charge quoted is faulty in that it does not inform the jury that unless appellant was attacked his right of self-defense would not have been justified. In this respect, this criticism is based upon no exception to the charge of the trial court. However, in our opinion, it is not tenable as a ground for reversal. Particularly is this true since the paragraph of the charge quoted comes from subdivision 16 of the court's charge, in which it was made plain to the jury that the right of self-defense would not be impaired unless each of the several elements of provoking the difficulty existed, and enumerating among them this:

"The things he says or does, either or both, must be reasonably calculated, under the circumstances, to and *do cause the deceased to attack the defendant."* This occurs more than once in the subdivision of the charge mentioned. Moreover, if there had been no attack on appellant or hostile demonstration, the necessity for a charge on self-defense is questionable.

The motion for rehearing is overruled.

*Overruled.*